IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DANIEL P. KERR,                        )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )   CIVIL ACTION NO. 11-G-3138-NE
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
    Defendant.                         )

## MEMORANDUM OPINION

The plaintiff, Daniel P. Kerr, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision

reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, Patrick R. Digby, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.

4

Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion

and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff alleges he is disabled due to Meniere's disease and positional vertigo.  The plaintiff began reporting dizziness in June 2007 to his primary care provider.  The dizziness was accompanied by hearing loss in the right ear and continued to worsen. On October 9, 2007, the plaintiff was referred to Dr. LaFrentz, who is a board certified in Otolaryngology.  Doctor LaFrentz continued to treat the plaintiff until March 31, 2008.  He referred the plaintiff to Dr. McGrew, at the Kirkland Otolaryngology/head and Neck Surgery Clinic.  On May 30, 2008, Dr. McGrew noted that the plaintiff complained of two to three episodes of vertigo per week that lasted more than 30 minutes.  The plaintiff also reported that nausea and vomiting was associated with his dizziness.  He also had tinnitus.  Doctor McGrew noted that the plaintiff had not improved on prescribed medications.

By September 2, 2008, Dr. McGrew noted that the plaintiff had elected to proceed with surgery to treat his Meniere's disease.  That surgery was performed on September 3, 2008.  In his first follow-up visit with Dr. McGrew on October 1, 2008, the plaintiff reported "a dramatic improvement in symptoms already with his episodes of dizziness decreasing from once every other day to now approximately once per month."  Record 214.  Doctor McGrew's impression was "right meniere's disease effectively treated with right endolymphatic to mastoid shunt."

The final treatment note from Dr. McGrew is dated April 3, 2009.  That treatment note states the plaintiff reported

> he has continued to have spinning episodes.  He said that these episodes last anywhere from 15 to 30 minutes, sometimes up to an hour 2 to 3 times per week.  These episodes also will occur multiple times in a given day.  He also reports some position is affecting or initiating the episodes.  He has not had his associated nausea and vomiting that he had pre-procedure.

Record 215.  Doctor McGrew's treatment plan stated that "many other symptoms are consistent with the history of benign positional vertigo."  Record 215.  The plaintiff was instructed on the importance of vestibular exercises.  Because the vestibular exercises would not work so long as the plaintiff was taking Valium, Dr. McGrew instructed the plaintiff to taper off a Valium.

At his ALJ hearing the plaintiff testified that he continued to have severe spinning episodes three to four times per week.  Record 33.  He testified that these spinning episodes sometimes lasted 20 minutes, but other times they lasted a few

hours. Record 32. He testified that during the severe portion of these attacks he had to lie down.

The ALJ refused to credit the plaintiff's testimony about the severity and frequency of his spinning episodes. One of the reasons given by the ALJ was that the plaintiff's testimony "contrasts sharply with what he told Dr. McGrew and suggests he was not fully credible at the hearing.". However, when the plaintiff saw Dr. McGrew on April 3, 2009, he reported the following:

> The patient reports that he has continued to have spinning episodes. He said that these episodes last anywhere from 15 to 30 minutes, sometimes up to an hour two to three times per week. These episodes will also occur multiple times in a given day.

Record 215. Therefore, contrary to the ALJ's assertions, the plaintiff's hearing testimony did not contrast sharply with what he reported to Dr. McGrew. His testimony was in fact quite consistent with his reports to Dr. McGrew on April 3, 2009.

The ALJ also found the plaintiff's activities of daily living to be inconsistent with his testimony of disabling spinning episodes:

> He testified he was able to wash dishes, vacuum, cook and take care of his own personal needs. He also watched television and worked puzzles. These activities require sustained concentration and would seemingly be difficult to perform with tinnitus and a sensation of spinning.

Record 13. However, the plaintiff's testimony was not as recited by the ALJ. He testified that he vacuumed "when I'm able." Record 30. The plaintiff explained that it was mostly bending over that prevented him from vacuuming. Record 31. He testified

that he could not "bend over without becoming so dizzy, I stagger and sometimes fall down." Record 31. This testimony is consistent with Dr. McGrew's diagnosis of positional vertigo. Record 215. The plaintiff's testimony about working puzzles, and cooking were also qualified as being activities he engaged in when he was able. When asked at the hearing what he did during the day he responded: "Watch a lot of TV. <u>When I'm able</u>, I try to cook. I work some jigsaw puzzles, <u>if I'm not too dizzy</u>. I try to read. Some days I can read, <u>some days I can't</u>, you know." Record 32 (emphasis added). Therefore, the plaintiff's testimony about his daily activities is in no way inconsistent with his testimony of disabling spinning episodes. This testimony is also consistent with his report of symptoms to Dr. McGrew.

Therefore, the ALJ's recited reasons for not crediting the plaintiff's hearing testimony are not supported by substantial evidence. Under the law of this circuit that testimony must be accepted as true. Because the ALJ found the plaintiff was unable to perform his past relevant work, the burden shifted to the Commissioner to show the plaintiff could perform other work. The Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work because the hypothetical questions posed to the vocational expert did not take into account the plaintiff's frequent spinning episodes. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of

the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.  Accordingly, an appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

    DONE this 26 April 2012.

                                      UNITED STATES DISTRICT JUDGE
                                        J. FOY GUIN, JR.